FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

AUG 0 8 2005

DAVID J. MALAND, CLERK
BY
DEPUTY

# United States District Court
### EASTERN DISTRICT OF TEXAS
### TEXARKANA DIVISION

| | | |
|---|---|---|
| TOMMY E. NORTON | § | |
| | § | |
| V. | § | CASE NO. 5:04cv144 |
| | § | (Judge Folsom/Judge Bush) |
| Commissioner of Social | § | |
| Security Administration | § | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

The Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying his claim for Disability Insurance Benefits. After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be affirmed.

## HISTORY OF THE CASE

Plaintiff originally filed an application for Disability Insurance Benefits on October 28, 2002, alleging inability to work since March 1, 2000 due to back surgery. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). After holding a hearing on December 8, 2003, the ALJ issued an unfavorable decision on February 23, 2004. Plaintiff subsequently requested that the Appeals Council conduct a review. The Appeals Council denied Plaintiff's request on May 26, 2004. Therefore, the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. §

405(g).

## STATEMENT OF FACTS

Plaintiff has a high school education and was 42 years old at the time of the ALJ hearing. According to the ALJ, Plaintiff related the following factual history:

> Mr. Norton alleges that he is disabled due to severe radicular low back pain and associated limitations. He initially injured his back in 1995 while lifting a heavy object at work. He was subsequently diagnosed with a herniated disc at L5-S1 of his lumbar spine and he underwent a laminectomy and partial discectomy surgery in June 1995. He continued to complain of persistent low back pain after the surgery, but he was able to return to work in 1996, and he worked at a substantial gainful activity level until March 2000. Radiographic testing of his lumbar spine at that time showed moderate scar formation at L5-S1, but there was no evidence of recurrent disc herniation. An EMG in August 1999 was also normal, showing no evidence of radiculopathy (Exhibits 1F, 2F, 3F, 5F, and 14F).
>
> In August 1999, Mr. Norton began physical therapy at the HealthSouth Rehabilitation Center and reported that his back pain had recently worsened due to increasing job demands. He rated his typical pain as 6 on a scale of 1-10, with 10 being the worst pain, and he indicated his worst pain was 8 out of 10. Nevertheless, he was able to ambulate independently without an assistive device, and the range of motion of his back was fairly good. Additionally, in October 1999, Mr. Norton's treating physician, Dr. Rutherford, noted that Mr. Norton had completed a functional capacity evaluation that indicated Mr. Norton was capable of doing light to medium work activity 8 hours per day. Mr. Norton questioned this conclusion and was referred to Dr. Jim Moore for a second opinion, but his examination remained good and subsequent radiographic testing showed no evidence of recurrent herniation or nerve root compression.
>
> A lumbar CT scan and myelogram in December 1999 showed diffuse spinal stenosis with very minimal dorsal and ventral defect and flattening of the thecal sac at L5-S1, a bony fusion from L4 through S1, and multiple mild disc bulges, but there was no frank herniation or nerve root compression. A discogram and CT scan in February 2000 showed diffuse thinning of the annulus fibrosus, a disc bulge at L5-S1 that encroached upon the right lateral process, and advanced degenerative changes of the left sacroiliac joint. However, there was no evidence of

extravasion, and the injection of contrast material caused no radicular pain. Dr. Moore opined that Mr. Norton was unable to return to his past work, which involved a lot of heavy lifting, but he did not suggest that Mr. Norton was disabled from all work activity, and he continued to recommend conservative treatment (Exhibits 7F, 8F, 9F, 12F, and 14F).

Mr. Norton continued to complain of persistent back pain, and in September 2000, Dr. Rutherford opined that Mr. Norton was physically disabled from working. However, in July 2001, Dr. Rutherford responded to a set of medical interrogatories and opined that Mr. Norton had an impairment rating of 10% only (Exhibit 14F, pgs. 5-7). Subsequent radiographic testing in April 2002 showed disc desiccation and a very mild disc bulge at L5-S1, but there was still no sign of herniations or protrusions. In July 2002, Dr. Rutherford noted that Mr. Norton had no appreciable change of his back and leg pain. Mr. Norton's gait remained unrestricted, his strength was normal, and he had no weakness or sensory disturbance. Mr. Norton continued to complain of persistent back and leg pain, but in January 2003, Dr. Rutherford noted that there was no need for further surgery or epidural steroid injections (Exhibit 13F, pgs. 1-4).

In November 2002, Mr. Norton underwent a worker's compensation examination with Kenneth Rosenzweig, M.D. and said he had constant low back pain and intermittent pain that radiated down his left leg. He rated his pain as 7 on a scale of 1-10 and he said he could not stand, walk, stoop, bend, or do household activities. Nevertheless, Mr. Norton's gait was unremarkable and he had near full flexibility of his back. The range of motion of his hips and upper extremities was also full, and there was no joint instability of his lower extremities. Mr. Norton was diagnosed with a herniated disc at L5-S1 status-post a laminectomy, post laminectomy syndrome, and chronic pain with radicular findings that were consistent with causalgia, but with no active radiculopathy per nerve testing. Dr. Rosenzweig opined that Mr. Norton should not return to job activities requiring heavy lifting, pushing, pulling, stooping, and bending, but he suggested Mr. Norton could do less strenuous work activity (Exhibit 13F).

In January 2003, Mr. Norton underwent a consultative examination with Dr. Mahmood Panjwani and complained of constant back pain and radicular pain, numbness, and tingling in his left leg. He said he could not walk more than 5-10 minutes or stand or sit more than 1-2 hours due to his pain, and kneeling, squatting, bending, and climbing were also difficult because of pain.

> Mr. Norton's gait and station were normal and he was able to walk on his heels and toes without difficulty. He could not squat all of the way down due to pain, but he could bend over without difficulty. His straight leg-raising test was negative, the range of motion of his back and upper and lower extremities were within normal limits, and he had no tenderness over his lumbar spine. His muscle strength was full (5/5), his sensation was normal, and his fine finger control and coordination were normal. Radiographic testing of his lumbar spine was also negative (Exhibit 15F).
>
> ---
>
> At the hearing Mr. Norton testified as follows: He last worked in March 2000 and he is not currently looking for work because his pain keeps him from working. He sees Dr. Rutherford once ever six months or as needed, and Dr. Rutherford prescribes his pain medication. His pain is 5 on a scale of 1-10 when he wakes up, and it can get to 8 out of 10 without him doing anything. He no longer does home exercises because it worsens his pain. He cannot lift more than 5 pounds or stand or walk more than 15-20 minutes at a time, and he can be on his feet only 2 1/2-3 hours in an 8-hour period. He can bend, but he cannot touch his toes, and he can drive, but he cannot change a flat tire. He sleeps okay and he tries to be active, see his friends, and go to church, but it depends on the pain and difficulty he is having.

(T.R. 15-17).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

After considering the record, the ALJ made the prescribed sequential evaluation.

The ALJ made the following findings:

1. Mr. Norton met the disability insured status requirements of the Act on March 1, 2000, the amended onset date that he became unable to work, and he has acquired sufficient quarters of coverage to remain insured through December 31, 2005.

2. Mr. Norton has not engaged in substantial gainful activity since March 1, 2000.

3. The medical evidence establishes that Mr. Norton has chronic pain, impairment status-post a herniated disc and a laminectomy and partial discectomy surgery of his lumbar spine, degenerative changes and mild disc bulges of the lumbar spine, post

4

       laminectomy syndrome, and failed lumbar surgery syndrome. He has a severe impairment or combination of impairments that meets or equals the criteria of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4.    Mr. Norton's statements concerning his impairments and their impact on his ability to work are not entirely credible.

5.    Mr. Norton retains the residual functional capacity to perform sedentary work.

6.    Mr. Norton is unable to perform his past relevant work.

7.    Mr. Norton is 42 years old, a younger individual, age 18-44. He has a high school education and an unskilled work background.

8.    Considering Mr. Norton's residual functional capacity of sedentary work and his age, education, and work history, 20 C.F.R. § 404.1569 and Rule 201.27, Table 1 of 20 C.F.R. Part 404, Subpart P, Appendix 2, direct the conclusion that he is "not disabled." Therefore, I find that Mr. Norton can perform other work existing in significant numbers in the national economy.

9.    Mr. Norton has not been under a disability, as defined in the Social Security Act, at any relevant time through the date of this decision.

(TR 20).

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings, *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1983), and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Smith v. Schweiker*, 646 F.2d 1075 (5th Cir. 1981); *see* 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, *Chaney v. Califano*, 588 F.2d 958, 959, (5th Cir. 1979), and conflicts in the evidence are resolved by the Commissioner. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

To establish disability, Plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382(a)(3).

## SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (1987). First, a claimant who at the time of his disability claim is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(b) (1987). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c) (1987). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Subpart P, Appendix 1 (1987). 20 C.F.R. § 404.1520(d) (1987). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is

not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e) (1987). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1529(f) (1987); 42 U.S.C. § 1382(a).

## ANALYSIS

Plaintiff raises the following three issues for appeal: 1) whether there is substantial evidence to support the Commissioner's decision that Plaintiff's allegations regarding his impairments and their impact on his ability to work are not entirely credible; 2) whether there is substantial evidence to support the Commissioner's decision that Plaintiff retains the residual functional capacity to perform sedentary work; 3) whether there is substantial evidence to support the Commissioner's decision that claimant is "not disabled."

The ALJ found that Plaintiff's allegation of total disability were not supported by the medical records and that his subjective complaints were not credible. In *Mathews v. Eldridge*, 424 U.S. 319, 345 (1976), the Supreme Court observed that the opinions and reports from medical "sources are likely to be able to communicate more effectively through written documents than are welfare recipients or the lay witnesses supporting their cause." Moreover, mere testimony without supporting medical evidence cannot establish disability by itself. *See* 20 C.F.R. § 404.1528(a). Fifth Circuit case law clearly establishes that a claimant's subjective complaints must be corroborated, at least in part, by objective medical testimony. *See Wren v. Sullivan*, 925 F.2d 123, 128-29 (5th Cir. 1991); 20 C.F.R. § 404.1508. Subjective

evidence will not take precedence over conflicting medical evidence. *See Harper v. Sullivan*, 887 F.2d 93, 96 (5th Cir. 1989). When there are conflicts between subjective complaints and objective evidence, the ALJ is to evaluate the claimant's credibility. *See Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988). Judgment as to the credibility of Plaintiff's testimony is the province of the ALJ. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991).

Plaintiff testified that he stopped working on March 1, 2000 (Tr. 282). Prior to quitting, radiographic studies of his lumbar spine demonstrated moderate scar formation at L5-S1, but there was no evidence of radiculopathy. In September 2000, Plaintiff's treating physician, Reginald Rutherford, M.D., opined in a letter to Plaintiff's previous employer, Cooper Tires, that Plaintiff was unable to return to work. In doing so, however, he opined that Plaintiff's whole body physical impairment was only ten percent. In June 2003, Dr. Rutherford lowered the disability rating to only five percent. In November 2002, Dr. Rosenzweig considered Plaintiff to experience only a ten percent whole person impairment. A rating of only five to ten percent belies Plaintiff's claim that he was totally disabled. *See Ward v. Apfel*, 65 F. Supp. 1208, 1216 (D.Kan. 1999) (a nine percent whole body impairment "is inconsistent with total disability"); *Gray v. Chater*, 903 F.Supp. 293, 301 n. 8 (N.D.N.Y. 1995) (there is "no such thing as a partial disability for purposes of the Social Security Act.").

There is no indication that Dr. Rutherford followed the Social Security criteria in forming his opinion. The ALJ contends that the letter arguably concerned only Plaintiff's prior job. Therefore, the ALJ contends he properly rejected Dr. Rutherford's

opinion as it did not concern the same criteria as required under the Act, and was otherwise inconsistent with other evidence demonstrating that Plaintiff could perform some other type of job. *Tamez v. Sullivan*, 888 F.2d 334, 336 n.1 (5th Cir. 1989); *Milam v. Bowen*, 782 F.2d 1284, 1287-88 (5th Cir. 1986).

Other evidence in the record supports the ALJ's rejection of Dr. Rutherford's opinion concerning all jobs, and further supports the ALJ's finding that Plaintiff can perform sedentary work. An April 2002 radiology report of Plaintiff's lumbar region revealed only "very mild degenerative facet changes" at L4-5, and his MRI was otherwise "normal" (T.R. 215) In July 2002 Dr. Rutherford observed that Plaintiff made no complaint of weakness or sensory disturbance, and a "clinical examination demonstrate[d] normal strength, symmetrical reflexes and unrestricted gait" (T.R. 216).

In November 2003, Dr. Rosenzweig observed that Plaintiff enjoyed a full range of motion in his back, as well as his upper and lower extremities with no joint instability (T.R. 16, 208). Moreover, Plaintiff exhibited no muscle atrophy or pain radiculopathy, and he demonstrated 5/5 strength in all muscle groups (T.R. 208-209). Objective factors that indicate the existence of severe pain include limitations on the claimant's range of motion, muscular atrophy, weight loss, or impairment of general nutrition, which Plaintiff has not shown. *See Hollis*, 837 F.2d at 1384; *see also Chaney v. Califano*, 588 F.2d 958, 960 (5th Cir. 1978) (constant, unremitting pain generally results in "observable signs such as drawn features, expressions of suffering, significant weight loss and poor overall health"). The absence of limiting objective

medical factors can itself justify an ALJ's conclusion. See *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); Hollis, 837 F.2d at 1384. As a result of the lack of objective evidence to support Plaintiff's complaints, Dr. Rosenzweig stated that his "subjective complaints seem to outweigh his objective findings . . ." Dr. Rosenzweig considered Plaintiff unable to perform jobs requiring heavy lifting, pushing, pulling or bending, but he could perform less strenuous "light medium duty" work activity (T.R. 16, 209).

In January 2003, Plaintiff presented to Mahmood Panjawi, M.D., for a consultative examination (T.R. 16, 251-256). Dr. Panjawi apparently did not have any outside medical records to review and relied on Plaintiff's unsubstantiated claims about the myriad of findings allegedly made by his treating physicians (T.R. 251). Dr. Panjawi placed very restrictive findings on Plaintiff, but his examination demonstrated that Plaintiff could bend over without difficulty, his range of motion in his upper and lower extremities was normal, his muscle strength was 5/5 throughout, and straight leg raising was negative (T.R. 16, 253, 255). Radiographic testing of his lumbar spine was also negative (T.R. 257).

Plaintiff's own statements from his administrative documents indicate he could still do the laundry and dishes, change the sheets, iron, take out the trash, and wash his car (T.R. 124). He could also shop and perform banking activities (T.R. 124).

The ALJ also explained that he relied on the assessments from the State Agency Medical Consultants (SAMC) that Plaintiff could perform sedentary work (T.R. 19, 266-272). Social Security regulations and rulings discuss the reliance that should be

placed on SAMC opinions. "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p. The consultants "consider the medical evidence in disability cases and make findings of fact on the medical issues, including, but not limited to, the existence and severity of an individual's impairment(s), [and] the existence and severity of an individual's symptoms . . ." Id. Based on his review of the evidence and acceptance of the SAMC physician opinion, the ALJ found that Plaintiff did not experience disabling limitations.

The ability to perform sedentary work requires lifting no more than ten pounds and is primarily performed in the seated position, although some walking and standing are required. There is substantial evidence to support the ALJ's decision that Plaintiff can perform this level of work without any other limitations. Plaintiff has not demonstrated that he experiences non-exertional limitations that would reduce the sedentary job base.

When the characteristics of the claimant correspond to the criteria in the Grids, and the claimant's "nonexertional impairments do not *significantly* affect his residual functional capacity, the [ALJ] may rely *exclusively* on the [Grids] in determining whether there is other work available that the claimant can perform." *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir.1987)(emphasis added), citing *Fields v. Bowen*, 805 F.2d 1168 (5th Cir. 1986)(*per curiam*); *Dellolio v. Heckler*, 705 F.2d 123, 127-28 (5th Cir. 1983); 20 C.F.R. § 404.1569. "Use of the 'Grid Rules' is appropriate when it is established that a claimant suffers only from exertional impairments, or that the

claimant's nonexertional impairments do not significantly affect his residual functional capacity." *Loza. v. Apfel*, 219 F.3d 278, 378 (5th Cir. 2000), *quoting Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999). The Fifth Circuit has permitted reliance on the Grids when a claimant's "non-exertional impairments do not sufficiently affect the residual functional capacity, then the Commissioner may rely exclusively upon the Grids to determine whether or not there is other work in the economy which the claimant can perform . . ." *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

"The mere presence of some impairment is not disabling *per se*. Plaintiff must show that [he] was so functionally impaired by [his impairment] that [he] was precluded from engaging in any substantial gainful activity." *Hames*, 707 F.2d at 165." The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Here, there is a quantum of medical evidence that claimant had a whole body low disability impairment; that his SLR's were negative; and that objective medical studies demonstrated that there was no present focal herniation or nerve extravasion. The ALJ's decision was supported by substantial evidence.

## **RECOMMENDATION**

Pursuant to the foregoing, it is RECOMMENDED that the decision of the Administrative Law Judge should be AFFIRMED.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days shall bar an aggrieved party from attacking the factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140, 106 (1985); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) *en banc*.

**SIGNED this 2nd day of August, 2005.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE